**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: _____

**Plaintiffs:**
NICOLAS SANTILLE, by and through his parents and next friends STEVEN SANTILLE and DENISE SANTILLE, and STEVEN SANTILLE and DENISE SANTILLE, individually,

v.

**Defendants:**
SOUTH PARK MEDICAL GROUP, PATTY SCHOVILLE, F.N.P., KATHERINE M. FITTING, M.D., and BRUCE GROSS, D.O.

---

**COMPLAINT**

---

**COME NOW** the Plaintiffs, above named, by and through their attorneys The Mahoney Law Firm, P.C., and as claims for relief allege as follows:

### I.      JURISDICTION

1. All Plaintiffs Steven Santille (hereinafter SS), Denise Santille (DS) and Nicolas Santille (hereinafter NS) are citizens and residents of the State of Ohio. All Plaintiffs reside at 3063 State Route #314, Fredericktown, Ohio 43019.

2. All Defendants are residents of the State of Colorado and practice their professions in the State of Colorado.

3. The sum in controversy in this case exceeds $75,000 exclusive of interest and costs.

4. This court has subject matter jurisdiction in this case on the basis of complete diversity of citizenship, pursuant to 28 U.S.C. §1332.

5. Venue is appropriate in this court pursuant to 28 U.S.C. §1391.

## II.  ALLEGATIONS COMMON TO ALL CLAIMS

10. Plaintiffs incorporate by reference all prior allegations of the complaint.

11. SS is the natural father of minor Nicolas Santille.

12. DS is the natural mother of minor Nicolas Santille.

13. Nicolas Santille was born on 12/23/07.

14. Nicolas Santille came under the care of an entity called South Park Medical Group in Fairplay, Colorado.

15. Katherine M. Fitting, M.D., was at all times relevant to the complaint a medical doctor practicing as a primary care physician for the South Park Medical Group.

16. Dr. Katherine M. Fitting (hereinafter KF) at the South Park Medical Group in Fairplay, Colorado rendered pediatric care from time to time to Nicolas Santille.

17. Patty Schoville, F.N.P. (hereinafter PS) was at all times relevant to the complaint a family nurse practitioner employed by the South Park Medical Group who rendered care to the minor Plaintiff Nicolas Santille.

18. At all times material to the complaint, PS was acting within the course and scope of her employment with the South Park Medical Group.

19. Bruce Gross, D.O. (hereinafter BG) was at all times relevant to the complaint an osteopathic physician who worked at Heart of the Rockies Medical Center in Salida, Colorado.

20. The Defendant BG held himself out to the community in general and to the plaintiffs in particular as skilled in emergency medicine and worked in the emergency medicine department of Heart of the Rockies Medical Center in Salida, Colorado.

21. The minor child NS was seen on 09/28/09 at South Park Medical Group in Fairplay, Colorado by family nurse practitioner Patty Schoville with complaints rendered by his mother of rash, cough, and irritability.

22. At the time of the above visit Nicolas Santille was 21 months of age with a known and documented prior history in the South Park Medical record of pulmonary hypertension associated with a hospitalization on oxygen and then on oxygen at home for 6 months.

23. On the above date NS was very irritable and agitated. The family nurse practitioner could not obtain a weight and had difficulty obtaining a pulse oximetry reading – though she thought it was 84% and so recorded that in the record.

24. The Defendant PS had the Defendant KF evaluate the patient on that date as well.

25. The Defendant PS placed in the chart, under coded diagnosis, probable hypoxia with etiology unknown.

26. The Defendant PS wrote on that date (09/28/09) a prescription for oxygen saturations to be re-evaluated on room air at home.

27. The Defendant KF also on the above date (09/28/09) personally evaluated the minor child NS, and obtained a history and performed a physical examination.

28. On 10/03/09, NS's mother, Denise Santille, called the South Park Medical Group stating that Nicolas Santille now had "edema" and that she was scared.

29. DS was advised to take NS to the Heart of the Rockies emergency department in Salida.

30. DS took NS to the hospital emergency department on 10/03/09 where NS was seen by the Defendant BG.

31. At that time the Defendant BG noted swelling of the face, hands, and legs and the presence of a rash on the neck and back of NS.

32. No blood pressure, respiratory rate, temperature, nor oxygen saturation were obtained at that time.

33. Laboratory data was obtained on the Plaintiff NS, including many abnormal laboratory values (which were marked abnormal in the medical record), but which the Defendant BG indicated in the record as normal.

34. Defendant BG discharged the minor Plaintiff sending him home on that date (10/3/09) with the final impression of "an allergic reaction."

35. NS was next seen on 10/06/09 at South Park Medical Center in Fairplay, Colorado.

36. NS was seen by Defendant PS, presenting at that time with a temperature of 101 degrees, a respiratory rate of 60, a pulse of 150, and a pulse oximeter reading of 54%.

37. At that time, NS's face and extremities were swollen and he exhibited rapid breathing.

38. On 10/6/09 NS was also evaluated by the Defendant KF.

39. An air evacuation ambulance was called for rapid transit to Swedish Medical Center in Denver, Colorado.

40. The chart diagnosis, established on that date was edema, etiology unknown, and hypoxia – etiology unknown.

41. When NS arrived at Swedish Medical Center they attempted stabilization of him and then transferred him to the pediatric intensive care center at Presbyterian/St. Luke's Medical Center in Denver, Colorado.

42. NS was admitted with signs and symptoms of congestive heart failure, right-sided heart failure, pulmonary hypertension, and collapsed lungs. NS needed endotracheal intubation, bronchoscopy, and full pulmonary ventilation.

43. Among NS's diagnoses were:

   a. Respiratory failure; and,

      b. Pulmonary hypertension requiring nitric oxide (see total parental nutrition).

44. NS remained at Presbyterian/St. Luke's Medical Center until 10/19/09, spending some of the time during the hospitalization on the critical care list.

45. NS was returned to his home on 10/19/09 after incurring in excess of $1,300,000 in medical expenses for his care.

### III.  FIRST CLAIM FOR RELIEF – Patty Schoville, F.N.P.

46. Plaintiffs incorporate by reference all prior allegations of the complaint.

47. The Defendant PS was negligent and substandard in her care of minor NS on 09/28/09 in that she obtained, had knowledge of, and documented in the record, a prior history on NS of pulmonary hypertension by prior diagnosis, prior need for home oxygen, an abnormal history, an abnormal physical examination, abnormal vital signs, and yet still did not make the diagnosis of an acute decompensating presence of pulmonary hypertension – causing hypoxia and the symptoms seen in NS.

48. As a result, direct and proximate, of the above described conduct, the minor child sustained the above diagnoses, including brain seizures, and incurred in excess of $1,300,000 in medical expenses.

49. Plaintiffs plead for relief in subsequent portions of the complaint.

### IV.  SECOND CLAIM FOR RELIEF – Katherine Fitting, M.D.

50. Plaintiffs incorporate by reference all prior allegations of the complaint as if fully set forth herein.

51. Defendant KF was negligent and substandard in failing on 09/28/09 to properly supervise the Defendant PS and to properly evaluate the minor child NS as displaying acute decompensation of his pulmonary hypertension.

52.     As a result, direct and proximate, of the above conduct the minor child NS required hospitalization and incurred in excess of $1,300,000 in medical expense.

53.     Plaintiffs plead for relief in subsequent portions of the complaint.

## VI.     THIRD CLAIM FOR RELIEF – Bruce Gross, D.O.

54.     Plaintiffs incorporate by reference all prior allegations of the complaint.

55.     The Defendant BG was negligent and substandard in his evaluation of the minor child NS on 10/03/09 in Salida, Colorado in that he failed to obtain vital signs, failed to appreciate the significance of multiple abnormal laboratory studies, failed to obtain a proper history, failed to communicate with the personnel at South Park Medical Group and failed to perform a proper physical examination.

56.     As a result, direct and proximate of the above described negligence, the minor child NS was made to undergo a one-month emergency hospitalization at Presbyterian/St. Luke's Medical Center in Denver, Colorado, and to incur in excess of $1,300,000 in medical expenses.

57.     Plaintiffs plead for relief in subsequent portions of the complaint.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. For a sum on money for non-economic damages for NS for his pain and suffering, and his loss of enjoyment of life due to the afore-described negligence.
2. For approximately $1,300,000 in prior medical expenses which Plaintiffs have incurred.
3. For costs of suit.
4. For expert witness fees.
5. For interest at the statutory rate from accrual of these causes of action.
6. For such other and further relief that the court may deem appropriate.

˘7˘

Respectfully submitted this 18th day of August, 2010

                                      THE MAHONEY LAW FIRM, P.C.

                                      By:   s/ Dennis M. Mahoney
                                      Dennis M. Mahoney, #2484
                                      Paul M. Mahoney, #23298
                                      Kevin S. Mahoney, #26154
                                      3300 East 1st Avenue, Suite 480
                                      Denver, CO 80206
                                      Telephone:  303-987-2210
                                      Telecopier:  303-987-0045
                                      E-Mail:  kevin@mahoneylaw.com
                                      *Attorneys for Plaintiff*

<u>Plaintiffs' Address</u>:
3063 State Route #314
Fredericktown, Ohio   43019
(419) 768-4237